

**In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00067-CV

_____

IN THE MATTER OF THE MARRIAGE OF ANTONIA N. BARNES
AND ROBERT H. WOODS, SR., AND IN THE
INTEREST OF R.H.W., JR., A CHILD

On Appeal from the 307th Judicial District Court
Gregg County, Texas
Trial Court No. 2009-1900-DR

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

This appeal is brought by Robert H. Woods, Sr., pro se, as a result of various alleged inequities resulting in a decree of divorce Woods claims is tainted by, among other things, unprofessional conduct by the court-appointed amicus attorney[1] for the parties' minor child. Woods asks this Court to remand this case to the trial court for further hearing.

Woods initially alleges that the hearing on temporary orders was "so greatly flawed," all that followed was tainted. Woods does not cite portions of the hearing which were allegedly subject to error; rather, he claims that the entire hearing was flawed because the amicus attorney for the parties' minor child alleged Woods violated the parties' Rule 11 agreement.[2]

The parties entered into a Rule 11 agreement on December 16, 2010. The agreement set forth Woods' visitation rights with his minor son,[3] confirmed the amount of child support arrearage, dismissed any contempt of court claims by Antonia N. Barnes, the mother of the parties' minor child, and established a monthly child support payment. In addition, the agreement provided that Woods would not engage in video recording his child except on special occasions

---

[1]*See* TEX. FAM. CODE ANN. § 107.021(A)(1) (West 2008).

[2]The appeal is from the final divorce judgment, but Woods appears to allege that events occurring at the temporary hearing were so prejudicial that "all that followed" involved "prejudice of the Court." For that reason, we will discuss the complaints regarding how the temporary hearing allegedly revealed such prejudice toward him that it resulted in an improper or erroneous final judgment.

[3]The agreement stated that Woods was to have no overnight visits with his son.

2

and that he would not attend Boy Scout meetings unless the minor child invited him to do so.[4]

At the hearing on temporary orders, the amicus attorney questioned Woods regarding his attendance at a scouting camp out with his child in December 2010, and video recording events while there. Woods claimed he did not violate the agreement because his son invited him to go on the trip, although he admitted to video recording his son while on the trip.

Woods expressed his opinion that his son thinks of amicus counsel like an aunt and is influenced by what she tells him and by what his mother tells him.

Also at this same hearing, the trial court visited with the minor child and reported the child's wishes to the parties. The trial court expressed the opinion that the child was not manipulated, and because the child had a strong personality, did not think he could be manipulated.

At the conclusion of the hearing on temporary orders, the trial court modified the existing temporary orders to provide that Woods may not video record his minor child except on birthdays and Easter, with no overnight stays at Woods' residence. Further, the parties were not to discuss the divorce proceedings and custody issues with their minor child.

Woods was represented by counsel at the hearing on temporary orders and was permitted to testify and to offer evidence with regard to all issues. We find no merit in the allegation that the temporary hearing was conducted in such a way that tainted the rights of Woods.

---

[4]The Rule 11 agreement also provided that Woods was to provide Barnes access to bank accounts at Texas Bank & Trust and Auction Bank by December 31, 2010.

Woods next alleges the trial court disallowed testimony Woods sought to offer, which was expected to contradict claims of the amicus attorney. Woods also complains that the court refused to hear evidence "contradicting his prejudice against the respondent." Woods fails to identify the allegedly disallowed testimony, and fails to articulate which claims of the amicus attorney such testimony was expected to contradict.

A pro se litigant is held to the same standards that apply to a licensed attorney[5] and must properly present his or her case on appeal, as the pro se litigant is required to do at the trial court. *Strange v. Continental Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied). Otherwise, pro se litigants would be given an unfair advantage over those parties represented by counsel. *Greenstreet v. Heiskel*, 940 S.W.2d 831, 835 (Tex. App.—Amarillo 1997, no writ). Therefore, we cannot make allowances just because a litigant is not an attorney. *Foster v. Williams*, 74 S.W.3d 200, 202 (Tex. App.—Texarkana 2002, pet. denied).

The Texas Rules of Appellate Procedure control the required contents and organization for an appellant's brief. *See* TEX. R. APP. P. 38. One of those requirements is that an appellant's brief must concisely state all issues or points presented for review. TEX. R. APP. P. 38.1(e). An issue presented in an appellant's brief is sufficient if it directs the court's attention to the error about which the complaint is made. *Bankhead v. Maddox*, 135 S.W.3d 162, 163 (Tex. App.—Tyler 2004, no pet.). An appellant's brief must also contain a clear and concise argument containing appropriate citations to authority and to the record. *See* TEX. R. APP. P. 38.1(i).

---

[5]*Weaver v. E-Z Mart Stores, Inc.*, 942 S.W.2d 167, 169 (Tex. App.—Texarkana 1997, no writ).

4

Conclusory statements, unsupported by legal citations, do not satisfy the rule. *Sweed v. City of El Paso*, 195 S.W.3d 784, 786 (Tex. App.—El Paso 2006, no pet.). The failure to cite legal authority or to provide substantive analysis of an issue waives the complaint. *Martinez v. El Paso County*, 218 S.W.3d 841, 844 (Tex. App.—El Paso 2007, pet. struck). Because Woods' complaint regarding exclusion of certain evidence is based solely on bare assertions, he has waived any such complaint.

Next, Woods maintains the trial court joined the amicus attorney in the case against him and empowered her alleged malicious prosecution and alleged professional misconduct. Our review of the record indicates the amicus attorney represented her client in a professional manner and did nothing which could be construed to reflect poorly on her professional integrity. Under the direction of the trial court, both hearings (on temporary orders and the final hearing for divorce) were conducted professionally, fairly, and impartially.

Woods next complains that the trial court, in determining visitation issues, placed "overwhelming weight" on the court's interviews with the child.[6] A trial court's decision on custody, control, possession, and visitation matters are reviewed for an abuse of discretion, and we reverse the trial court's order only if we determine, from reviewing the record as a whole, that the trial court abused its discretion. *Patterson v. Brist*, 236 S.W.3d 238, 239–40 (Tex.

---

[6]The Texas Family Code accords the trial court the option—and in some instances, the duty—to interview a child to determine the child's wishes regarding any issue in the suit affecting the parent-child relationship. TEX. FAM. CODE ANN. § 153.009 (West 2008). The trial court interviewed the child on two separate occasions. With permission of the child, the trial court explained to the parties the result of the interview. Woods objects that the trial court overemphasized the desires of the child.

5

App.—Houston [1st Dist.] 2006, no pet.). We indulge every legal presumption in favor of the trial court's judgment and view the evidence in the light most favorable to that judgment. *Id.* at 240. The determination of conservatorship issues regarding a minor child is guided by the best interest of the child and is intensely fact-driven. *In re Marriage of Jeffries*, 144 S.W.3d 636, 639 (Tex. App.—Texarkana 2004, no pet.).

Here, in addition to the child's desires, as expressed to the trial court, there is evidence that (1) Woods was mentally and verbally abusive to his wife and child during the marriage, (2) the child is anxious and stressed about spending time with his father, (3) Woods has anger problems, and (4) Barnes is an excellent mother. Our review of the record indicates the trial judge properly considered the evidence and made a judgment based on that evidence. That is what trial judges must do. We find the trial judge did not abuse his discretion with regard to the conservatorship issues.

Woods generally maintains that the amicus attorney unduly influenced the child as evidenced by the child's conflicting points of view, inasmuch as the child's life experiences allegedly contradict his words. That is, Woods expresses concern that his child was in some way manipulated by the amicus attorney to indicate that he did not want overnight stays with his father and that he did not want his father to attend scouting camp outs with him, when, in reality, the child enjoys spending time with his father. Woods fails to point to evidence of undue influence or coercion, other than his own experiences with the child, which he claims are good. The trial

6

judge, having been made aware of this issue, expressed his viewpoint:

> First and foremost, you two are very fortunate; he is a very bright, articulate, strong personality child. I enjoyed the visit. . . . He is articulate and easy . . . to talk to; and I really enjoyed it. . . . I did not sense any kind of manipulations. I don't think you could manipulate this boy. He just has that strong personality that I just don't think that that would be possible for mother or grandparents or anybody to put thoughts in this boy's head.
>
> > . . . .
>
> I don't believe that he is being directed. I don't believe that this young man is capable of being directed or controlled with what he's supposed to discuss or not. I believe he's speaking from his heart and telling me what he thinks - - he's just telling me as he sees it.

The record does not support Woods' assertion that the child was influenced—by the amicus attorney or anyone else—in the desires he expressed to the court.

> We affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:     March 19, 2012
Date Decided:       March 20, 2012

7